# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0655-WS-N |
| | ) |
| JAMES M. CRUMB, M.D., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on the Government's Motion to Modify Scheduling Order and for Leave to File Second Amended Complaint (doc. 97). The Motion has been briefed and is now ripe for disposition.[1]

### I. Background.

The Government brought this False Claims Act action against defendants, James Crumb, M.D., Mobility Metabolism & Wellness, P.C. ("MMW"), and Coastal Neurological Institute, P.C. ("CNI"). According to the First Amended Complaint, defendants submitted or caused to be submitted false claims to federal health care benefit programs for treatment using false diagnoses of rare neurological disorders identified as Spasmodic Torticollis ("ST") and/or Genetic Torsion Dystonia ("GTD"), solely to create covered and payable claims.[2] In that manner, the Government alleges, defendants successfully submitted claims for reimbursement of Botox injection procedures and ultrasound guidance used in treatment of ST and GTD that would

---

[1] In the Motion, the Government represents that "[t]he Defendants do not oppose the United States' Motion." (Doc. 97, at 11.) In fact, all defendants have filed opposition briefs. (*See* docs. 103, 104.) As such, the Government's statement of non-opposition will not be credited for purposes of this Order.

[2] Indeed, the First Amended Complaint alleged that "Dr. Crumb knowingly falsified diagnoses [of] over a thousand patients, representing that CNI and MMW patients suffered from rare neurological disorders of [ST] and/or [GTD], when in fact the patients did not have such diagnoses." (Doc. 34, ¶ 7(a).)

otherwise have been denied as non-covered. The First Amended Complaint (doc. 34) spans 69 pages and 307 numbered paragraphs, with nearly 300 pages of accompanying exhibits (including spreadsheets containing detailed claims data).

Of particular import for the pending Motion to Amend, Paragraph 108 of the First Amended Complaint sets forth certain factual allegations in support of the Government's false diagnosis theory of liability. That paragraph reads as follows:

> "More than twenty CNI and MMW patients were interviewed during the course of the United States' investigation, and none were aware that Dr. Crumb diagnosed them with rare neurological movement disorders. In fact none of the patients had ever heard of these diagnoses."

(Doc. 34, ¶ 108.)

The Rule 16(b) Scheduling Order fixed a deadline of July 1, 2016 for motions to amend the pleadings. (Doc. 64, ¶ 6.) That deadline expired without any requests by the Government for further amendments. On September 2, 2016, however, the Government filed a Motion to Modify Scheduling Order and for Leave to File Second Amended Complaint. The only modification to the voluminous First Amended Complaint that the Government proposes to make at this time is to substitute the following language for the existing Paragraph 108:

> "More than twenty CNI and MMW patients were interviewed during the course of the United States' investigation, and **all but a few were unaware** that Dr. Crumb diagnosed them with rare neurological movement disorders. In fact **many** of the patients had never heard of these diagnoses."

(Doc. 97, Exh. B, ¶ 108 (emphasis added).) So, instead of saying that none of the patients interviewed during the Government's investigation were aware that Dr. Crumb had diagnosed them with ST or GTD, the Second Amended Complaint would say that all but a few of the patients lacked such awareness. And instead of saying that none of the interviewed patients had ever heard of these diagnoses, the Second Amended Complaint would say that many of them had not heard of these diagnoses. Those are the sole amendments proposed by the Government. All defendants have objected, and the requested edits to seven words in a single paragraph of the Government's pleading have spawned more than 35 pages of briefing.

II. **Analysis.**

   A. *Rule 16(b)(4) Good Cause.*

As the Government correctly recognizes, the first hurdle it confronts is to demonstrate good cause for modifying the July 1, 2016 deadline fixed by the Scheduling Order for amending

pleadings. Where a party endeavors to amend its pleading after the scheduling order deadline has passed, the movant must satisfy the more stringent standard of Rule 16(b)(4), Fed.R.Civ.P., before reaching the relaxed Rule 15(a)(2) test. *See, e.g., Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed.R.Civ.P. 16(b)."); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).").[3] Pursuant to that rule, "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4), Fed.R.Civ.P. The "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).[4] The burden of establishing the requisite good cause / diligence lies with the Government, as the party seeking relief from the lapsed deadline.[5]

---

[3] The rationale for requiring a heightened showing to amend the pleadings after the scheduling order deadline lapses is as follows: "[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded …. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2395194, *1 n.3 (S.D. Ala. June 22, 2012) (citation omitted); *see also Baker v. U.S. Marshal Service*, 2014 WL 2534927, *2 (D.N.J. June 5, 2014) ("Extensions of time without good cause would deprive courts of the ability to effectively manage cases on their overcrowded dockets and would severely impair the utility of Scheduling Orders.").

[4] *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."); *King v. Chubb & Son*, 563 Fed.Appx. 729, 732 (11th Cir. Apr. 22, 2014) ("There can be no good cause where the record shows that the late-filing party lacked diligence in pursuing its claim.") (citation and internal quotation marks omitted).

[5] *See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3rd Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence."); *Northstar Marine, Inc. v. Huffman*, 2014 WL 3720537, *3 (S.D. Ala. July 28, 2014) ("The burden of establishing good cause / diligence rests squarely on the party seeking relief from the scheduling order.").

To meet its burden, the Government explains that it did not discover the factual error in the current iteration of Paragraph 108 until after the Scheduling Order deadline had passed. Indeed, the Government sets forth the following chronology: (i) on July 27, 2016, CNI alerted the Government to its belief that Paragraph 108 was factually inaccurate, based on CNI's observations of one of Dr. Crumb's patients at a deposition on June 3, 2016; (ii) in preparing discovery responses due on September 6, 2016, the Government discovered that it might have overlooked patient interviews conducted in 2013 that were outside the scope of the False Claims Act investigation; (iii) the Government conducted a self-audit of Paragraph 108 in late August 2016; (iv) based on that self-audit, counsel for the Government determined that as many as three patients interviewed were "arguably" aware that Dr. Crumb had diagnosed them as having ST or GTD, and that the Government had overlooked those interviews in drafting the Amended Complaint; and (v) the instant Motion followed as the Government fulfilled its "obligation and duty to immediately provide notice of the factual inaccuracy to the parties and to the Court." (Doc. 97, at 6.)

Simply stated, then, the Government's position is that it made a mistake in drafting the Amended Complaint. Specifically, the pleading asserted that none of the patients interviewed knew that Dr. Crumb had diagnosed them as having ST or GTD, or had even heard of such diagnoses. In fact, a small number of the interviewed patients had or may have had such knowledge, as set forth in interviews that the Government had failed to consider in drafting the Amended Complaint. Upon identifying this error, the Government moved promptly to correct it. Under the particular circumstances presented here, and given the modesty of the correction and the fact that it is being made to adjust language in one paragraph of the pleading that everyone now agrees to be inaccurate, the Court is satisfied that the Government has shown the requisite good cause to modify the Scheduling Order deadline for amending pleadings so as to allow the Second Amended Complaint to be filed at this time.[6]

---

[6] In so concluding, the Court has considered defendants' respective response briefs. CNI concedes that "it does not oppose the need to file yet another amendment … if the United States has now determined that it contains factual inaccuracies." (Doc. 104, at 3.) For their part, Dr. Crumb and MMW readily acknowledge that "Paragraph 108 is inaccurate and does need to be corrected." (Doc. 103, at 3.) But they insist the Government should have known of the inaccuracy back at the time of "the very first deposition in this case," involving a patient named E.K. (*Id.*) CNI focuses on this same point, citing the E.K. deposition as well as the availability
(Continued)

### B.     *Rule 15(a)(2) Interests of Justice.*

Having satisfied the "good cause" requirements of Rule 16(b)(4), the Government must also show that its proposed amendment passes muster under Rule 15(a)(2). *See Sosa*, 133 F.3d at 1419. That rule provides that, as a general proposition, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a)(2), Fed.R.Civ.P. "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014 ) (citation and internal quotation marks omitted).

"Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Mann v. Palmer,* 713 F.3d 1306, 1316 (11th Cir. 2013) (citation omitted); *see also Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) ("Leave may be denied because of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.") (citation and internal quotation marks omitted). "A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend," where "the amendment involves new theories of recovery or would require additional discovery." *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) (citation omitted). In light of the relaxed Rule 15(a) standard, however, "[d]istrict courts have limited discretion in denying leave to amend, and should grant a

---

of the other interviews that the Government says it initially overlooked. The Government's response is that it did not view the E.K. deposition as requiring amendment of Paragraph 108 and that it "completely disagrees with" defendants' characterization of that deposition. (Doc. 109, at 7.) After careful consideration, the Court is satisfied that the Government attorneys who filed the Amended Complaint overlooked the other set of interviews requiring amendment of Paragraph 108 until after the Scheduling Order deadline had expired, and that they acted promptly and diligently to correct the error after becoming aware of same.

motion to amend unless there are substantial reasons to deny it." *Bowers v. U.S. Parole Com'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014) (citation and internal marks omitted).

It cannot reasonably be argued that circumstances of undue delay, unfair prejudice or futility militate against allowing the Government to amend its pleading. CNI objects to what it terms an "eleventh-hour switch" in the text of Paragraph 108, but this case is far from the eleventh hour. (Doc. 104, at 5.) The discovery cutoff date is May 26, 2017, some eight months away, with a trial setting in November 2017, more than a year from now. (*See* doc. 64, ¶¶ 3-4.) Even if the Government's modification of seven words in one paragraph of a 69-page pleading really "carries great weight and is far from immaterial" as CNI contends (doc. 104, at 5), there is considerable time for defendants to adjust their discovery plans and litigation strategies accordingly. On this record, the Court cannot and does not find that any of the limited circumstances authorizing denial of a motion for leave to amend pursuant to Rule 15(a)(2) are present here. Again, the Government discovered a factual mistake in one paragraph of a voluminous pleading, and now seeks to fix it. While the parties debate the significance of the proposed modification, suffice it to say that neither the analysis nor the conclusions of the Order (doc. 92) adjudicating defendants' Motions to Dismiss would be materially affected by this amendment. At this early stage of the proceedings, the interests of justice unequivocally favor allowing the Government to amend its complaint for the limited purpose of correcting the error it discovered in Paragraph 108.

In opposing the Motion to Amend, defendants request various other forms of relief, many of them directed at what they perceived to be continued inaccuracies in Paragraph 109 of the proposed Second Amended Complaint. Dr. Crumb and MMW assert that "this situation justifies the Defendants being afforded significant latitude in obtaining discovery" and "respectfully request entry of an order striking Paragraphs 108 and Paragraph 109 from the Amended Complaint or, in the alternative, entry of an order requiring the United States to correct both paragraphs." (Doc. 103, at 4.) And CNI urges the Court to hold in abeyance any ruling on the Motion for Leave to Amend until such time as a full-scale investigation into the propriety of Paragraph 109 has occurred, including immediate production of interview reports involving former patients and *in camera* judicial review of such reports. (Doc. 104, at 8.) Finally, CNI

requests an order requiring the Government "to pay defendant's costs associated with the filing of answers to any Second Amended Complaint that may be filed." (*Id.*)[7]

Defendants have identified no authority for the relief they request, and the Court is aware of none. With respect to Paragraph 108, the Government is correcting a known error at an early stage of this litigation; therefore, there is no conceivable reason to strike it, as Dr. Crumb and MMW request. Nor would it be appropriate to award CNI its costs associated with filing an answer to the Second Amended Complaint. In its Answer to the First Amended Complaint, CNI addressed Paragraph 108 (again, the only paragraph affected by this new amendment) as follows: "CNI denies the allegations in Paragraph 108." (Doc. 101, ¶ 108.) In all likelihood, CNI's answer to the Second Amended Complaint will be a carbon copy of its answer to the First Amended Complaint with, at most, tinkering to a single sentence. No costs will be awarded for such a *pro forma* endeavor. And Dr. Crumb / MMW's suggestion that the scope of discovery should be somehow broadened beyond the constraints of Rule 26 and other discovery principles in light of this amendment is not well-taken.

As for Paragraph 109, the Court understands that defendants disagree with the factual allegations therein. The Court further understands that the Government stands by the accuracy of those allegations. These kinds of disagreements as to the veracity *vel non* of well-pleaded facts in a complaint happen every single day in federal court. They are not grounds for striking the challenged paragraph, forcing the plaintiff to amend that paragraph against its wishes, conducting *in camera* review of documents at the pleadings stage to make a judicial determination as to which side's position is in the right, or carrying out a litigation within a litigation as to whether the disputed factual allegation must be corrected in the underlying pleading. As plaintiff in this case, the Government is the master of its complaint. Absent inclusion of "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f), Fed.R.Civ.P., which no party has invoked, the Government's decision to leave

---

[7] The Court observes that an exhibit to CNI's response lists one of Dr. Crumb's former patients by name. This is improper and unacceptable, as a matter of both federal law and the governing procedural rules. The Clerk of Court is directed to **seal** Exhibit D to CNI's Response (doc. 104). All parties are reminded that it is essential for them to implement adequate and effective safeguards to ensure that the privacy interests of non-party patients will not be compromised via inclusion in the public record of unredacted filings such as Exhibit D to document 104. This kind of error must not recur.

Paragraph 109 in its current form is not properly assailed via opposition to a Motion for Leave to Amend.

## III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. The Government's Motion to Modify Scheduling Order and for Leave to File Second Amended Complaint (doc. 97) is **granted**;
2. Defendants' requests for myriad alternative forms of relief subsumed within their Responses (docs. 103, 104) to the Motion are **denied**;
3. Pursuant to Civil L.R. 15(c), the Government is **ordered**, on or before **September 27, 2016**, to refile its Second Amended Complaint as a freestanding pleading in substantially the same form as Exhibit B to its Motion;[8]
4. Defendants' answers to the Second Amended Complaint are due on or before **October 11, 2016**; and
5. The Clerk of Court is directed to **seal** Exhibit D to docket entry 104, which defendant CNI filed in unredacted form in the public court file even though it includes personal identifying information for a non-party patient.

DONE and ORDERED this 23rd day of September, 2016.

          s/WILLIAM H. STEELE
          CHIEF UNITED STATES DISTRICT JUDGE

---

[8] In refiling the Second Amended Complaint as a freestanding pleading, the Government is not required to refile Exhibits B, C and D to that pleading. Those exhibits (hundreds of pages of sensitive claims records containing patient names, treatment dates, diagnoses, procedures/services performed and so on) have previously been filed under seal at docket entry 37 and are not modified by the Second Amended Complaint.